# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| BILLY KERR, individually and on behalf of all others similarly situated, <br><br> v. <br><br> GPS INTERNATIONAL, LLC | **Case No. 1:21-cv-1140** <br> FLSA Collective Action <br> FED. R. CIV. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Billy Kerr brings this lawsuit to recover unpaid overtime wages and other damages from GPS International, LLC under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19, *et seq.*, and for unjust enrichment under New Mexico law.

2.      Kerr and the other workers like him were typically scheduled for at least 12-hour shifts, 7 days a week, and their hitches routinely lasted for weeks at a time.

3.      Kerr and the other workers like him often worked even more than that, but they were not paid overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead of paying overtime as required by the FLSA and the NMMWA, GPS improperly classified these workers as independent contractors and paid them a single day rate for all hours worked each day.

5.      This collective and class action seeks to recover the unpaid overtime wages and other damages owed to these workers under the FLSA and the NMMWA, as well as for its unjust enrichment at the expense of its workers in New Mexico.

**JURISDICTION AND VENUE**

6.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.     This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

8.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

10.     Kerr performed work for GPS in this District and Division.

**PARTIES**

11.     Kerr worked for GPS from December 2019 until March 2020.

12.     During that time, Kerr worked exclusively for GPS.

13.     Kerr was an operator for GPS.

14.     Kerr was paid a day rate.

15.     Kerr was not paid a salary.

16.     Kerr was not paid on a fee basis.

17.     Kerr was not paid by the hour.

18.     Kerr was not paid a flat rate.

19.     Kerr was not paid on a flat rate schedule.

20.     GPS classified Kerr as an independent contractor.

21.     Kerr's written consent is attached as Exhibit A.

22.     Kerr represents at least two groups of similarly situated co-workers in this lawsuit.

23.    Kerr represents a collective of similarly situated workers under § 16(b) of the FLSA. *See* 29 U.S.C. § 216(b) (the "FLSA Collective"). The FLSA Collective is defined as:

> **Current and former workers employed by, or working on behalf of, GPS International LLC as independent contractors in the United States in the past three years who were paid a day rate.**

24.    Kerr represents a class of similarly situated workers under New Mexico law, pursuant to Federal Rule of Civil Procedure 23 (the "New Mexico Class"). This New Mexico Class is defined as:

> **Current and former workers employed by, or working on behalf of, GPS International LLC as independent contractors in New Mexico in the past three years who were paid a day rate.**

25.    Together, the FLSA Collective Members and New Mexico Class Members are referred to as the "Similarly Situated Workers."

26.    **GPS International, LLC ("GPS")** is a Texas limited liability company.

27.    GSP conducts business in a systematic and continuous manner throughout New Mexico and this District.

28.    GPS may be served by serving its registered agent for service of process: **Alicia Heiskell, 4200 Research Forest Dr., Ste. 110, The Woodlands, TX 77381**.

### COVERAGE UNDER THE FLSA

29.    At all relevant times, GPS was an employer of Kerr within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30.    At all relevant times, GPS was an employer of the Similarly Situated Workers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31.     At all relevant times, GPS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32.     During at least the last three years, GPS has had gross annual sales in excess of $500,000.

33.     During at least the last three years, GPS was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

34.     During at least the last three years, GPS has employed many workers, including Kerr and the Similarly Situated Workers, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

35.     The goods and materials handled, sold, or otherwise worked on by Kerr, the Similarly Situated Workers, and other GPS employees and that have been moved in interstate commerce include, but are not limited to, oilfield equipment and supplies.

36.     GPS treated Kerr as an employee and uniformly dictated the pay practices to which Kerr was subjected.

37.     GPS's misclassification of Kerr as an independent contractor does not alter his status as an employee for purposes of this FLSA action.

## FACTS

38.     GPS specializes in servicing the oil and gas industry. GPS, Service Sectors, https://www.gpsinc.com/service-sectors (last visited Nov. 30, 2021).

39.     GPS's "clients are major oil and gas operating companies, multinational energy service companies, multinational engineering and construction companies and small

businesses." GPS, About GPS, https://www.gpsinc.com/about-us-gps (last visited Nov. 30, 2021).

40.     GPS provides workers for field services, including well testing, flowback operators, flowback water transfer services. GPS, Service Sectors, https://www.gpsinc.com/service-sectors (last visited Nov. 30, 2021).

41.     To provide these services, GPS needs operators to perform that work.

42.     Many of these individuals worked for GPS performing the same or substantially similar job duties as Kerr and were misclassified by GPS as so-called independent contractors in connection with GPS's oilfield operations.

43.     GPS needs these workers to perform its oilfield support work.

44.     For example, without flowback operators, GPS could not provide flowback services.

45.     Without well testers, GPS could not provide well testing services.

46.     While exact job titles and job duties may slightly differ, Kerr and the Similarly Situated Workers were subjected to the same or similar illegal pay practices for similar work.

47.     Specifically, GPS classified the Similarly Situated Workers as independent contractors and paid them a daily rate for all hours worked, even when they were working in excess of 40 hours in a workweek.

48.     For example, Kerr worked exclusively for GPS from December 2019 until March 2020.

49.     Throughout his employment with GPS, Kerr was classified as an independent contractor.

50.    GPS typically scheduled Kerr to work shifts of at least 12-hours, for as many as 7 days per week.

51.    Kerr frequently worked well in excess of 40 hours per week for GPS.

52.    In fact, Kerr frequently worked more than 84 hours per week for GPS.

53.    The work Kerr performed is an essential part of GPS's core business.

54.    During Kerr's employment with GPS and while he was classified as an independent contractor, GPS exercised control over all aspects of his job.

55.    Kerr was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

56.    During the time that Kerr worked with GPS, he worked exclusively for GPS.

57.    GPS controlled all the significant or meaningful aspects of the job duties performed by Kerr.

58.    GPS ordered the hours and locations Kerr worked, tools used, and rate of pay received.

59.    Even though Kerr often worked away from GPS's offices without the presence of a direct GPS supervisor, GPS still controlled all aspects of Kerr's job activities by enforcing mandatory compliance with GPS and/or its client's policies and procedures.

60.    No real investment was required of Kerr to perform his job.

61.    GPS determined Kerr's opportunity for profit and loss.

62.    Kerr did not provide the equipment he worked with on a daily basis. GPS or its clients made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Kerr works.

63.     Kerr did not incur operating expenses like rent, payroll, marketing, and insurance.

64.     Kerr was economically dependent on GPS during his employment.

65.     GPS set Kerr's rate of pay and his work schedule and prohibited him from working other jobs for other companies while working on jobs for GPS.

66.     GPS directly determined Kerr's opportunity for profit and loss, as Kerr's earning opportunity was based on the amount of time GPS scheduled him to work.

67.     Very little skill, training, or initiative was required of Kerr to perform his job duties.

68.     Indeed, the daily and weekly activities of Kerr and the Similarly Situated Workers were routine and largely governed by standardized plans, procedures, and checklists created by GPS and/or its clients.

69.     Virtually every job function of the Similarly Situated Workers was pre-determined by GPS and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties.

70.     Kerr and the Similarly Situated Workers were prohibited from varying their job duties outside pre-determined parameters.

71.     Moreover, the job functions of Kerr and the Similarly Situated Workers were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

72.     For the purposes of an unpaid overtime claim, Kerr and the Similarly Situated Workers performed substantially similar job duties related to servicing oil and gas operations in the field.

73.    Kerr performed routine manual and technical labor duties that were largely dictated by GPS and/or its clients.

74.    Kerr was not employed by GPS on a project-by-project basis.

75.    Kerr was not paid by GPS on a project-by-project basis.

76.    While Kerr was classified as an independent contractor, he was regularly on call by GPS and/or its clients and was expected to drop everything and work whenever needed.

77.    All the Similarly Situated Workers performed the same or similar job duties and were subjected to the same or similar policies and procedures by which GPS dictated the day-to-day activities performed by each person. The Similarly Situated Workers also worked similar hours as Kerr and were denied overtime pay as a result of the same illegal pay practice.

78.    Kerr and the Similarly Situated Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for days or weeks at a time.

79.    Instead of paying them overtime, GPS paid Kerr and the Similarly Situated Workers a day-rate.

80.    GPS denied Kerr and the Similarly Situated Workers any overtime premium for any hours worked in excess of 40 hours in a single workweek.

81.    Kerr and the Similarly Situated Workers maintained and worked with oilfield machinery, performed manual labor, and worked long hours in the field.

82.    Because Kerr and the Similarly Situated Workers were misclassified as independent contractors by GPS, they should receive overtime for all hours they worked in excess of 40 hours in each workweek.

83.     GPS's policy of failing to pay overtime to its operators, including Kerr, violated the FLSA and the NMMWA because these workers were, for all purposes, employees performing non-exempt job duties.

84.     GPS's day-rate system violated the FLSA and the NMMWA because Kerr and the Similarly Situated Workers did not receive any overtime premium pay for hours worked over 40 hours each workweek.

## COLLECTIVE ACTION ALLEGATIONS

85.     Kerr incorporates all other allegations.

86.     The illegal pay practices GPS imposed on Kerr were likewise imposed on the FLSA Collective Members.

87.     GPS employs many other workers who worked over 40 hours per week and were subject to GPS's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

88.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

89.     Based on his experience and tenure with GPS, Kerr is aware that GPS's illegal practices were imposed on the FLSA Collecitve Members.

90.     These workers were similarly situated within the meaning of the FLSA.

91.     GPS's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the FLSA Collective Members.

## CLASS ACTION ALLEGATIONS

92.     Kerr incorporates all other allegations.

93.    The illegal pay practices GPS imposed on Kerr were likewise imposed on the New Mexico Class Members.

94.    Numerous other individuals who worked with Kerr were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the NMMWA.

95.    The New Mexico Classes is so numerous that joiner of all members is impracticable.

96.    GPS imposed a uniform practice or policy on Kerr and the New Mexico Class Members regardless of any individualized factors.

97.    Based on his experience and tenure with GPS, Kerr is aware that GPS's illegal practices were imposed on the New Mexico Class Members.

98.    New Mexico Class Members were all improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

99.    GPS's failure to pay wages and overtime compensation at the rates required by the NMMWA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the New Mexico Class Members.

100.    GPS's experiences are therefore typical of the experiences of the New Mexico Class Members.

101.    Kerr has no interest contrary to, or in conflict with, the New Mexico Class Members. Like each member of the proposed class, Kerr has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

102.    A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

103.    Absent this action, many New Mexico Class Members likely will not obtain redress of their injuries and GPS will reap the unjust benefits of violating New Mexico law.

104.    Furthermore, even if some of the New Mexico Class Members could afford individual litigation against GPS, it would be unduly burdensome to the judicial system.

105.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

106.    The questions of law and fact common to each of the New Mexico Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

(a)    Whether the New Mexico Class Members were improperly classified as independent contractors;

(b)    Whether the New Mexico Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

(c)    Whether GPS's day rate pay scheme, without overtime pay regardless of the number of hours worked, violated the NMMWA;

(d)    Whether GPS knowingly benefitted at the expense of the New Mexico Class Members; and

(e)    Whether allowing GPS to retain the benefit it obtained at the expense of the New Mexico Class Members would be unjust.

107.    Kerr's claims are typical of the New Mexico Class Members' claims. Kerr and the New Mexico Class Members have sustained damages arising out of GPS's illegal and uniform employment policy.

108.    Kerr knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

109.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

## FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA

110.    Kerr incorporates all other allegations.

111.    GPS violated the FLSA by failing to pay GPS and the FLSA Class Members overtime under its day-rate system for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

112.    GPS knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Kerr and the FLSA Class Members proper overtime compensation.

113.    GPS's failure to pay overtime compensation to Kerr and the FLSA Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

114.    Accordingly, Kerr and the FLSA Class Members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION—VIOLATIONS OF THE NMMWA

115.    Kerr incorporates all other allegations.

116.    The conduct alleged in this Complaint violates the NMMWA.

117.    GPS was and is an "employer" within the meaning of the NMMWA.

118.    At all relevant times, KOAS employed Kerr and the other New Mexico Class Members as "employees" within the meaning of the NMMWA.

119.    The NMMWA requires an employer like GPS to pay overtime to all non-exempt employees.

120.    Kerr and the other New Mexico Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

121.    Within the applicable limitations period, GPS had a policy and practice of failing to pay proper overtime to the New Mexico Class Members for their hours worked in excess of 40 hours per week.

122.    As a result of GPS's failure to pay proper overtime to Kerr and the New Mexico Class Members for work performed in excess of 40 hours in a workweek, Defendants violated the NMMWA.

123.    Kerr and the New Mexico Class Members are entitled to overtime wages under the NMMWA in an amount equal to 1.5 times their rates of pay, plus treble damages, attorney's fees, and costs. NMSA § 50-4-26.

124.    Since before Kerr began working for GPS until at least after he left, GPS subjected Kerr and the NMMWA class members to the illegal pay scheme at issue.

125.    The illegal pay scheme was GPS's continual practice of paying class members through at least 2019.

126.    The illegal pay practices at issue were thus part of a continuing course of conduct.

127.    GPS's continuing course of conduct regarding the pay practice at issue entitles Kerr and the New Mexico Class Members to recover for all such violations, regardless of the date they occurred. NMSA § 50-4-32.

### THIRD CAUSE OF ACTION—UNJUST ENRICHMENT

128.    Kerr incorporates all other allegations.

129.    GPS's acts and omissions in denying proper overtime pay to Kerr and the New Mexico Class Members was done knowingly.

130.    As a result of its unlawful acts and omissions, GPS received substantial benefit in the form of financial compensation that rightfully belonged to Kerr and the New Mexico Class Members.

131.    It would be unjust to allow GPS to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Ker and the NMMWA class members the wages they were entitled to under the NMMWA.

132.    GPS has been unjustly enriched by its unlawful acts and omissions.

### DAMAGES

133.    GPS's acts and omissions, individually and collectively, caused Kerr and the Similarly Situated Workers to sustain legal damages.

134.    Kerr and the FLSA Class Members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

135.    Kerr and the New Mexico Class Members are entitled to overtime wages under the NMMWA in an amount equal to 1.5 times their rates of pay, plus treble damages, attorney's fees, and costs. NMSA § 50-4-26.

136.    Kerr and the New Mexico Class Members are entitled to recover for GPS's unjust enrichment, including restitution and penalties.

137.    Kerr and the Similarly Situated Workers are entitled to recover attorneys' fees and costs of court.

138.   Kerr and the Similarly Situated Workers are entitled to recover liquidated damages under the FLSA.

139.   Kerr and the New Mexico Class Members are entitled to treble damages under the NMMWA.

140.   Kerr and the New Mexico Class Members are entitled to exemplary damages on their unjust enrichment claim.

141.   Kerr and the Similarly Situated Workers are entitled to pre- and post-judgment interest at the maximum legal rates.

142.   A constructive trust should be imposed on GPS, and the Court should sequester any benefits or money wrongfully received by GPS at the expense of Kerr and the New Mexico Class Members.

### RELIEF SOUGHT

Wherefore, Kerr prays for judgment against GPS as follows:

(a)   For an order certifying this case as a collective action pursuant to 29 U.S.C. §216(b) for the purposes of the FLSA claims;

(b)   For an order certifying Kerr's claims under the NMMWA as a Rule 23 class action, appointing Kerr as a class representative, and his counsel as class counsel;

(c)   For an order certifying Kerr's claims under New Mexico law as a Rule 23 class action, appointing Kerr as a class representative, and his counsel as class counsel;

(d)   For an order finding GPS liable for violations of the FLSA with respect to Kerr and all FLSA Collective Members covered by this case;

(e)   For an order finding GPS liable for violations of the NMMWA with respect to Kerr and all New Mexico Class Members covered by this case;

(f)   For an order finding GPS was unjustly enriched by its violations of the NMMWA with respect to Kerr and all New Mexico Class Members covered by this case;

(g)     For an order imposing a constructive trust on GPS and sequestering the benefits and monies that it wrongfully obtained at the expense of Kerr and the New Mexico Class Members;

(h)     For a judgment awarding all unpaid wages and liquidated damages to Kerr and all Similarly Situated Workers covered by this case;

(i)     For an order awarding treble damages to Kerr and all New Mexico Class Members covered by this case;

(j)     For an order awarding restitution, penalties, and exemplary damages to Kerr and all New Mexico Class Members covered by this case;

(k)     For a judgment awarding Kerr and all Similarly Situated Workers covered by this case their attorneys' fees, costs, and expenses of this action;

(l)     For a judgment awarding Kerr and all Similarly Situated Workers covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(m)     For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
D.N.M. Id. # 16-155
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**